IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN L. BLOCHER, | ) | |
| Plaintiff | ) | C.A. No. 17-335 Erie |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| UPMC HAMOT HOSPITAL, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

**A.     Relevant Procedural History**

Plaintiff Karen L. Blocher brings this action against Defendant UPMC Hamot Hospital for alleged violation of her rights under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq.* ("ADEA"), and the Pennsylvania Human Relations Act, 43 Pa. C.S. §§ 951, *et seq.* ("PHRA"). Specifically, Plaintiff claims that she was terminated because of her age, despite her "excellent" job performance. As relief for her claims, Plaintiff seeks compensatory damages, costs and attorney's fees.

Defendant has moved for summary judgment, asserting that Plaintiff's employment was terminated for legitimate, nondiscriminatory reasons. [ECF No. 23]. Plaintiff has filed a brief in opposition to Defendant's motion, asserting that Defendant's stated reasons for terminating her employment were merely a pretext for age discrimination. [ECF No. 32]. In support of this assertion, Plaintiff cites, *inter alia*, comments allegedly made by one of Plaintiff's co-workers during the EEOC investigation of Plaintiff's claims, which are referred to in paragraphs 13, 14, and 15 of Plaintiff's Counterstatement of Material Facts at Issue (ECF No. 30, at ¶¶ 13-15).

1

Defendant has filed a motion *in limine* to exclude those paragraphs, and the document to which those paragraphs refer [ECF No. 37], which motion is also pending before the Court. Plaintiff has filed a brief in opposition to Defendant's motion *in limine* [ECF No. 42], and Defendant has filed replies to both of Plaintiff's opposition briefs [ECF Nos. 46, 47]. This matter is now ripe for consideration.

**B.    Relevant Factual History**

Plaintiff began working for Proctology Associates, the predecessor to UPMC Hamot Colon and Rectal Surgery, in 1984. (ECF No. 24, Defendant's Concise Statement of Material Facts, at ¶ 1). In or around 1994, Plaintiff became Assistant Office Manager. (Id. at ¶ 3). Defendant purchased Proctology Associates in 2010, and Plaintiff's title changed to "Front Office Coordinator and Surgery Scheduler." (Id. at ¶¶ 5, 7).

On May 31, 2011, Plaintiff received a Corrective Action Report for reading a text message on a physician's phone and for retaliating against the employee who reported her to management for doing so. (Id. at ¶¶ 8-9). As a result, Plaintiff received a one-day suspension from work without pay, and was warned that "Any further unprofessional or inappropriate conduct will result in a three-day suspension with review for possible termination." (Id. at ¶ 10). The Report was issued by Kelli Scarpitti and Robin Williams ("Williams"). (Id. at ¶ 11). At all times relevant to this case, Williams was Defendant's Senior Human Resources Consultant. (ECF No. 24-11, Affidavit of Robin Williams, at ¶ 3).

Anne Gilliland ("Gilliland") began working for Defendant as Business Manager at Colon and Rectal Surgeons in September 2011 (ECF No. 24, at ¶ 13). On February 7, 2012, Plaintiff received a Corrective Action Memo from Gilliland listing ongoing problems with Plaintiff's

performance, including lack of teamwork and cooperation, and tardiness and absenteeism. (ECF No. 24-4). Plaintiff was advised that "continuation of these concerns or any other unacceptable behaviors/performance will be reviewed for possible termination of employment." (Id. at p. 2).

On August 24, 2012, Gilliland emailed Plaintiff regarding Plaintiff's failure to follow established procedures regarding rescheduling surgeries with the surgery center. (ECF No. 24, at ¶ 18). On April 11, 2013, Gilliland emailed Williams regarding ongoing issues with Plaintiff, noting "We had a staff meeting on Tuesday and she was upset about the meeting. She then called off on Wednesday." (Id. at ¶ 22; ECF No. 24-7).

On August 16, 2013, Gilliland sent Williams an email stating that Plaintiff "is still an ongoing problem," and listing a number of items of concern, including, *inter alia*, Plaintiff's "clean[ing] out" of the office of a co-worker who was out on FMLA leave, in violation of Gilliland's instructions not to move anything in the office; Plaintiff's constant "complaining and blaming people;" Plaintiff's use of the phrase "Oh my God" at least three times in the presence of a patient, who then complained that Plaintiff's language was offensive and unprofessional; Plaintiff's inappropriate comments about a physician's personal life; and Plaintiff's ongoing failure to help with answering phones. [ECF No. 24-10].

On August 21, 2013, Plaintiff received a third Corrective Action Report, identifying the following as the causes for corrective action:

> On 3/31/11 you received a final warning for misconduct. On 2/7/12 you received a document explaining concerns with your performance/behavior and my expectations as outlined in this document in areas of teamwork, collaboration and professionalism. Furthermore, on or about August 2, 2013 you cleaned out your co-worker's office, disregarding my prior directions not to do so. This behavior is insubordinate.

(ECF No. 24-12). The Report was signed by both Williams and Gilliland, who were both present at Plaintiff's corrective action meeting on August 21, 2013, during which Plaintiff was informed by Williams that her employment was terminated. (Id.; ECF No. 24, at ¶¶ 38, 39).

### C. Discussion

#### 1. ADEA Order of Proof[1]

The order of proof in a suit under the ADEA mirrors that of a Title VII discrimination action. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); Rodriguez v. Taylor, 569 F.2d 1231, 1239 (3d Cir. 1977), cert denied, 436 U.S. 913 (1978). Plaintiff must first establish a prima facie case of age discrimination by proving the following four basic facts: (i) she is within the protected age group of 40-70; (ii) she was the subject of an adverse employment action; (iii) she was qualified for the position in question; and (iv) younger employees were treated more favorably. Proof of these basic facts raises an inference of discrimination, which is given the force and effect of a rebuttable presumption. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981).

Once a prima facie case is established, the employer must then articulate a legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 254; Santiago v. Brooks Range Contract Servs., 618 Fed. Appx. 52, 54-55 (3d Cir. 2015). The employer need not persuade the court that it was actually motivated by the proffered reasons, but needs only to raise a factual issue as to whether it discriminated against the plaintiff. Burdine, at 254-55. This burden is satisfied if the employer "simply 'explains what [it] has done' or

---

[1] The Third Circuit has held that "the same analysis used for ADEA is also applied to PHRA claims." Prewitt v. Walgreens Co., 92 F. Supp. 3d 292 n. 4 (E.D.Pa. 2015), citing Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005). Thus, Plaintiff's PHRA claim is subsumed in the Court's discussion of his ADEA claim.

4

'produc[es] evidence of legitimate nondiscriminatory reasons.'" Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24, 25, n.2 (1978). Thus, "the employer need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Burdine, 450 U.S. at 257.

Once the employer has met its relatively light burden of articulating a legitimate reason for the adverse employment decision, the burden shifts back to the plaintiff to show by a preponderance of the evidence that the employer's proffered explanation is pretextual. Id. Plaintiff may meet this burden either directly, by persuading the court that the employer's action was more likely motivated by a discriminatory reason, or indirectly, by showing that the employer's proffered explanation is unworthy of credence. See McDonnell Douglas, 411 U.S. at 804-805.

Throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff. See Burdine, 450 U.S. at 253-256. Plaintiff may meet this burden if his "prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).

In this case, Defendant has assumed for purposes of its motion that Plaintiff has met her burden of establishing a prima facie case of age discrimination and, instead, argues that it had legitimate, non-discriminatory reasons for terminating Plaintiff's employment and that Plaintiff has failed to prove that such reasons were merely a pretext for age discrimination. Thus, this

Court will focus attention on the second and third prongs of the McDonnell-Douglas burden-shifting analysis.

### 2. **Defendant's Proffered Non-Discriminatory Reasons**

According to Defendant, Plaintiff was terminated for the reasons described in the third Corrective Action Report that was issued to Plaintiff on August 21, 2013, including her failure "to meet expectations … in areas of teamwork, collaboration and professionalism," and insubordination attributable to "clean[ing] out [her] co-worker's office, disregarding [] prior directions not to do so." [ECF No. 24-12]. Thus, Defendant has met its relatively light burden of proffering legitimate, non-discriminatory reasons for having terminated Plaintiff's employment.

### 3. **Plaintiff's Burden to Prove Pretext**

The burden now shifts to Plaintiff to prove by a preponderance of evidence that Defendant's proffered reasons were actually a pretext for age discrimination. Burdine, 450 U.S. at 257. Plaintiff "may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994). Yet, "regardless of which prong of the Fuentes test plaintiff chooses to establish pretext, 'the plaintiff's evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was the 'but-for' cause for the adverse employment action.'" Wareham v. Dollar Bank, 937 F.Supp. 2d 656, 668-69 (W.D. Pa. 2013), quoting Abels v. DISH Network Serv., LLC, 507 Fed. Appx. 179, 183 (3d Cir. 2012) (citations omitted). "In other words, 'it is not enough … to *dis*believe the employer," but rather, "the plaintiff must show '*both*

that the reason was false, and that discrimination was the real reason[.]'" Wareham, 937 F.Supp.2d at 669, quoting St. Mary's Honor Ctr. V. Hicks, 509 U.S. 502, 511 n.4 & 515 (1993) (emphasis in original).

While the Court recognizes that requiring such proof "places a difficult burden on the plaintiff, '[i]t arises from an inherent tension between the goal of all discrimination law and our society's commitment to free decisionmaking by the private sector in economic affairs.'" Fuentes, 32 F.3d at 765, quoting Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992). "Barring discrimination, a company has the right to make business judgments on employee status, particularly when the decision involves subjective factors deemed essential to certain positions." Healy v. New York Life Ins. Co., 860 F.2d 1209, 1220 (3d Cir. 1988). Nonetheless, while the Court acknowledges that "[d]irect proof of age discrimination is often unavailable or difficult to find.... we do not infer from the nature of discrimination suits that a jury determination is required in every case." Billet v. CIGNA Corp., 940 F.2d 812, 828 (3d Cir. 1991) (citation omitted).

### a. Evidence Intended to Discredit Defendant's Proffered Reasons

To discredit a legitimate reason proffered by the employer, a plaintiff must present evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes, 32 F.3d at 765. Thus, the onus is on Plaintiff to "cast[ ] sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication." Fuentes, 32 F.3d at 759. "In simpler terms, [Plaintiff] must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the

employer's real reason." Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1109 (3d Cir. 1997).

Here, Plaintiff seeks to discredit Defendant's proffered reasons for terminating her employment by raising arguments aimed at negating them. First, Plaintiff asserts that the primary reason offered for Plaintiff's termination - insubordination - did not occur. Principally, Plaintiff contends that she never received an order from Gilliland to refrain from moving items in the office of Annette Krusewicz ("Annette"), and that she was, in fact, given a box by Gilliland to put Annette's belongings in. To buttress this latter contention, Plaintiff references a note purportedly written by an unidentified EEOC investigator indicating that one of Plaintiff's co-workers, Teri Christiansen ("Christiansen"), "heard" Gilliland offer Plaintiff a box to put Annette's belongings in; however, when asked about this notation during her deposition in this matter, Christiansen testified that she was not present to hear Gilliland offer Plaintiff a box, but that Plaintiff told her that Gilliland did so. (ECF No. 31, Christiansen deposition transcript, at p. 52 (internal p. 24)). Thus, it is apparent that Christiansen was merely parroting Plaintiff's own words. Such "evidence", even assuming it is admissible,[2] provides little, if any, support to Plaintiff's argument that Defendant's proffered reason of insubordination "did not occur."

Second, Plaintiff attempts to undermine Defendant's "heavy emphasis" on her "allegedly insubordinate behavior" by arguing that she "was not confronted about this behavior until nine days after it was allegedly discovered." (ECF No. 32, Plaintiff's Opposition Memorandum, at p. 2). However, the Third Circuit Court has held that "[a] company is under no obligation to

---

[2] The notation referenced by Plaintiff is the subject of Defendant's pending motion *in limine* [ECF No. 38]. Since the Court finds the notation to have little, if any, evidentiary value, Defendant's motion *in limine* will be dismissed as moot.

warn plaintiff of complaints regarding his performance and, if anything, the effect of such evidence is equivocal, perhaps indicating that plaintiff was receiving the benefit of the doubt." Healy, 860 F.2d at 1216; see also Keller, 130 F.3d at 1111 (a "reasonable factfinder could draw only a relatively weak inference" from an absence of explicit criticism before termination). Thus, the mere delay in confronting Plaintiff with her insubordinate behavior fails to tip the scale toward a finding that Defendant's proffered reason was fabricated or unworthy of credence.

Third, Plaintiff argues that Defendant's "sole focus on insubordination via its representation to the Pennsylvania Unemployment Office and in its internal reporting is inconsistent with its current contention there were <u>many</u> reasons which led to Plaintiff's termination." (ECF No. 32, at p. 3) (emphasis in original). In other words, because Defendant chose to focus on insubordination as the basis for Plaintiff's termination in its defense of her unemployment compensation claim, Plaintiff calls into question the legitimacy of any reasons related to unsatisfactory job performance that have been proffered by Defendant in this case. This argument is without merit.

As noted earlier, the August 21, 2013, corrective action report that led to Plaintiff's termination specifically referenced Plaintiff's job performance issues, including her failure "to meet expectations … in areas of teamwork, collaboration and professionalism." [ECF No. 24-12]. Thus, Defendant's proffered reasons related to unsatisfactory job performance were made apparent at the time of Plaintiff's termination and cannot be discounted simply because Defendant chose not to emphasize them in Plaintiff's unemployment compensation proceeding. Moreover, even if Defendant had raised such performance-related issues here for the first time, this fact alone would not make them pretextual. See Healy, 860 F.2d at 1215-16 (although *post*

9

*hoc* explanations made after the initiation of a lawsuit may be suspect, such do not *ipso facto* prove pretext; the plaintiff still has the burden of demonstrating that there is reason to disbelieve the explanation; without such evidence, there is no genuine issue of material fact").

In short, Plaintiff has simply failed to provide any evidence to show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence.'" Fuentes, 32 F.3d at 765, citing Ezold, 983 F.2d at 531. Thus, Plaintiff has not met her burden of proving that Defendant's proffered reasons for terminating her are, in actuality, pretexts for age discrimination.

### b. Evidence of Discrimination

As an alternative to discrediting Defendant's proffered reasons for her termination, Plaintiff can defeat Defendant's summary judgment motion "by presenting either sufficient direct evidence or sufficient indirect evidence of discrimination." Salkovitz v. Pioneer Electronics (USA) Inc., 188 Fed. Appx. 90, 92 (3d Cir. 2006), citing Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004). In this regard, "Plaintiff must show that h[er] age was a *determinative* factor in Defendant's decision to terminate h[er], not just that it was one of a number of motivating factors." Anderson v. Equitable Resources, Inc., 2009 WL 4730230, at *14 (W.D. Pa. Dec. 4, 2009), citing Gross v. FBL Fin. Servs., 557 U.S. 167, 177 (2009) (emphasis in original). Thus, to survive summary judgment, a plaintiff must present evidence by which a reasonable jury could conclude that her "age was the but-for cause of the challenged adverse employment action." Marcus v. PQ Corp., 458 Fed. Appx. 207, 211 (3d Cir. 2012), citing Gross, 557 U.S. at 177.

Here, Plaintiff's evidence of discrimination is unconvincing. In particular, Plaintiff

10

highlights "two overtly ageist statements" allegedly made by Gilliland between April 2012 and May 2013: (1) a comment that Dr. Reilly's wife, Bette Reilly, visited the office and spoke only to Plaintiff because she was jealous of Gilliland and Christiansen, who were both younger and worked with her husband; and (2) a comment that Gilliland wanted to hire as Dr. Reilly's medical assistant someone who was "old and ugly." (ECF No. 32, at p. 6). In addition, Plaintiff claims that she reported to Gilliland that a younger co-worker had yelled at her for supposedly having Alzheimer's, but Gilliland just laughed and didn't do anything to discipline the co-worker. (Id.). Plaintiff also generally alleges that Gilliland treated two younger employees more favorably than her. Plaintiff argues that "[t]hese ageist comments, and conduct, combined with other evidence of pretext (here, the fact that no insubordinate act was committed) may allow a jury to find [Defendant's] termination reason was pretextual and return a finding of intentional age discrimination." (Id. at p. 11). The Court disagrees.

First, "statements made by non-decision makers or by a decision maker unrelated to the decisional process itself are *not* directly evidence" of discrimination. Glanzman v. Metropolitan Management Corp., 391 F.3d 506, 513 (3d Cir. 2004), citing Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989). Assuming, *arguendo*, that Gilliland was a decision maker, the comments attributed to her were clearly made outside the context of the termination decision itself. Moreover, they hardly are sufficient to establish that Plaintiff's age was the but-for cause of her termination, particularly in light of Defendant's proffered reasons that have been found to be legitimate.

Second, Plaintiff's offhand argument that Gilliland treated two younger employers more favorably than her, without more, is insufficient evidence of age discrimination. In a discrimination case, a plaintiff may offer comparator evidence showing "that the employer has

11

treated more favorably similarly situated persons not within the protected class." Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 645 (3d Cir. 1998). "In determining whether employees are similarly situated, we take into account factors such as the employees' work responsibilities and supervisors, the nature of the misconduct, and 'the particular criteria or qualifications identified by the employer as the reason for the adverse action.'" Vay v Houston, 725 Fed. Appx. 112, 117 (3d Cir. 2018) (citations omitted). In Vay, the Third Circuit upheld the District Court's finding that the comparators cited by the plaintiff were not similarly situated to her because there was no evidence that they engaged in comparable misconduct to that for which the plaintiff was terminated. Id. Thus, the plaintiff could not show that the comparators were treated more favorably than her under similar circumstances. The same holds true here, as the only evidence of favorable treatment offered by Plaintiff is that the two younger employees were not required to clock out for lunch. (ECF No. 30, at ¶ 21).

Thus, even considering the evidence in the light most favorable to her, Plaintiff has failed to show that her age was the but-for cause of her termination. As a result, Defendant's summary judgment motion will be granted.

An appropriate Order follows.